IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAURICE KEMP,<br>   *Plaintiff,*<br><br> v.<br><br>ALMO CORPORATION,<br>   *Defendant.* | Civil No. 24-2444 |

MEMORANDUM

COSTELLO, J.                              August 21, 2025

   Plaintiff Maurice Kemp sued Defendant Almo Corporation ("Almo") for harassment and discrimination, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964. Almo has moved to dismiss Kemp's retaliation (Count II) and constructive discharge (Count III) claims. For the reasons that follow, the Court will grant Almo's motion to dismiss the retaliation claim but will deny the motion as to the constructive discharge claim.

**I.  BACKGROUND**

   According to the Complaint, Almo hired Kemp as a forklift operator in or around February 2017. ECF No. 9 ¶ 8. In May of 2023, Kemp was unloading a truck when Jerry Ross, the plant manager and Kemp's supervisor, grabbed him "by the waist and hips and rubbed him up and down in a sexually suggestive manner." *Id*. ¶ 9. Kemp's former supervisor saw Ross touch Kemp and told Kemp he would speak to Ross about it. *Id*. ¶ 16.

   Additionally, Ross stared at Kemp when he walked past Ross' office on his way to the restroom. *Id*. ¶ 17. Ross would then follow Kemp into the restroom, stand behind him, and watch him. *Id*. ¶ 18. Kemp began avoiding the restroom to avoid Ross. *Id*. at ¶ 24.

In October 2023, Ross commented on Kemp's feet while Kemp was changing his shoes after his shift. Ross told Kemp he had "really big, nice feet." *Id.* ¶ 27. Kemp believed this comment was sexually suggestive. *Id.* ¶ 28. One of Kemp's co-workers reportedly overheard the comment. *Id.* ¶ 33.

On November 2, 2023, Kemp reported Ross' conduct to Human Resources ("HR"), which began an investigation. *Id.* ¶¶ 36-37. An area where some of the unwanted touching occurred was covered by video surveillance and Kemp asked to see the footage. *Id.* ¶¶ 38-39. An HR representative told Kemp that she saw something strange on the footage, but she could not allow him to view it. *Id.* ¶ 40. HR suspended Kemp for three days during the investigation. *Id.* ¶ 41. During this time, Ross continued to work and was not subject to disciplinary action. *Id.* ¶ 42.

On or about November 9, 2023, HR reported to Kemp that the investigation was complete and that no action would be taken against Ross. *Id.* ¶ 43. Kemp then became "fearful for his safety in the workplace" and "concerned" that Ross would retaliate against him "if he continued to avoid his sexual advances." *Id.* ¶ 44. The next day, Kemp terminated his employment. *Id.* ¶ 45.

## II.    LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In deciding a motion to dismiss, the Court may consider "only the allegations contained

2

in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

The Court must accept as true all reasonable inferences arising from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). However, the Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

If a claim "is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008) (citation omitted).

### III.   DISCUSSION

#### A.   Retaliation

To establish a prima facie case of retaliation, the plaintiff must allege: (1) that he engaged in a protected employee activity; (2) that he suffered an adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal link between the two. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007) (quoting *Fogleman v. Mercy Hosp. Inc.*, 283 F.3d 561, 567–68 (3d Cir. 2002)).

To successfully plead an adverse action, "the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in [the retaliation] context means it well might have dissuaded a reasonable worker from making or supporting a

charge of discrimination.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 195 (3d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Here, Kemp points to his three-day suspension and HR's decision not to discipline Ross.

With respect to Kemp's suspension, the amended complaint does not allege whether the suspension was paid or unpaid, and it does not describe any other conditions or consequences related to the suspension. A suspension may qualify as an adverse action in certain circumstances, including if the suspension is unpaid. *See Friel v. Mnuchin*, 474 F.Supp.3d 673, 690 (E.D. Pa. 2020) (finding five-day suspension without pay that impacted plaintiff's award eligibility was an adverse employment action for purposes of retaliation). A paid suspension may also qualify as an adverse action, but courts typically require a plaintiff to allege more than just a suspension without pay in retaliation cases. *See Newman v. Point Park Univ.*, No. 20-204, 2022 WL 969601, at *17 (W.D. Pa. Mar. 31, 2022) (finding that plaintiff alleged facts sufficient to plausibly show that her paid suspension, coupled with additional conditions, such as cancelling university professor's course, removing her as Chair, banning her from campus, and barring her email access, could plausibly constitute a materially adverse employment action in the retaliation context); *see also Thourot v. Monroe Career & Technical Institute*, No. 14-1779, 2016 WL 6082238, at *5 (M.D. Pa. Oct. 17, 2016) (finding that complaint contained sufficient allegations to support adverse action element where plaintiff was placed on paid administrative leave, and was required to undergo medical evaluation and sign a performance improvement plan). Here, Kemp has not alleged sufficient facts to allow the Court to determine whether his suspension constituted an adverse employment action for purposes of his retaliation claim.

As for HR's notice of the outcome of its investigation, *i.e.*, the decision not to discipline Ross, Kemp fails to offer any allegations explaining how this decision constituted an adverse action directed toward him. Kemp does not allege how this decision altered the conditions of his employment or allege how this decision might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Kemp must do more than merely point to his employer's decision not to discipline another employee to make out a plausible retaliation claim.

Kemp has not sufficiently alleged an adverse employment action for purposes of his retaliation claim. However, because he may be able to do so, the Court will grant him leave to amend the Complaint.

B.   **Constructive Discharge**

"Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). To establish constructive discharge, an employee must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1084 (3d Cir. 1996) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 888 (3d Cir. 1984)). The inquiry is objective, and an employee's subjective perceptions do not govern. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1083 (3d Cir. 1992) (citation omitted); *see also Colwell v. Rite Aid Corp.*, 602 F.3d 495, 502 (3d Cir. 2010).

To determine if an employee was forced to resign, courts consider factors such as whether the employee was threatened with discharge, encouraged to resign, demoted, subjected to reduced pay, benefits or responsibilities, transferred to a less desirable position, or given

unsatisfactory job evaluations. *Colwell,* 602 F.3d at 503 (citing *Clowes v. Allegheny Valley Hosp.*, 991 F.2d 1159, 1161 (3d Cir. 1993)). However, the Third Circuit has rejected imposing an "aggravated circumstances" requirement upon constructive discharge claims. *Aman,* 85 F.3d at 1084 ("The fact that Aman had been subject to continuous discrimination during her employment could support a conclusion that she simply had had enough.") (citing *Levendos v. Stern Entertainment, Inc.*, 860 F.2d 1227, 1232 (3d Cir. 1988) (declining to adopt "a broad proposition of law that a single non-trivial incident of discrimination can never be egregious enough to compel a reasonable person to resign.")).

     Kemp claims he was constructively discharged because Almo failed to prevent severe and pervasive sexual harassment and then retaliated against him for complaining about it. Kemp identifies three instances of harassment, two in May 2023 and one in October 2023. He points to his suspension and the HR investigation in November 2023, which resulted in no disciplinary action against Ross. Kemp resigned eight days after he filed his complaint with HR and one day after HR informed him that it would not discipline Ross. Kemp alleges that after HR declined to discipline Ross, he became fearful that the harassment would continue, and that Ross would retaliate against him for continuing to rebuff his sexual advances. Taking his allegations as true, as the Court must when deciding a motion to dismiss, Kemp has alleged sufficient facts to state a plausible claim for constructive discharge. While Kemp's subjective perceptions do not govern, the events he has alleged are not trivial. Kemp was subjected to repeated instances of harassment, which he reported to HR. As a result, Kemp received a suspension while the alleged harasser faced no discipline and therefore no deterrence from continuing to harass Kemp. Under these circumstances, it is plausible that a reasonable person would resign. Accordingly, the Court will deny Almo's motion to dismiss Kemp's constructive discharge claim.

## IV.     CONCLUSION

The amended complaint does not contain sufficient factual allegations to plausibly allege a claim for retaliation.  The Court will therefore grant Almo's motion to dismiss the retaliation claim and give Kemp an opportunity to amend his complaint.  The Court will deny Almo's motion to dismiss Kemp's constructive discharge claim because Kemp has alleged sufficient facts to raise a plausible right to relief.

An appropriate order follows.

BY THE COURT:

_____
MARY KAY COSTELLO, J.